QUESTION PRESENTED AND CONCLUSION
Are increases in employment tax rates computed under statutory tax rate schedules in place prior to the effective date of Article 10, Section 20, tax rate increases requiring voter approval?
No. The Act's tax scheme was established before Article 10, Section 20 became effective. Because the tax scheme necessarily contemplates fluctuations in tax rates, any increase which occurs within the context of the scheme is not a "new tax" or "tax rate increase" within the meaning of Article 10, Section 20.
ANALYSIS
On November 3, 1992, Colorado's citizens adopted Amendment One to the state constitution. The amendment, which now appears as Article 10, Section 20 of the Colorado Constitution, is commonly referred to as TABOR (the "Taxpayers' Bill Of Rights"). The amendment states in pertinent part that starting November 4, 1992, districts, including the State, must have advance voter approval for:
 any new tax, tax rate increase, mill levy above that for the previous year, valuation for assessment ratio increase for a property class, or extension of an expiring tax, or a tax policy change directly causing a net tax revenue gain to any district.
Colo. Const. art. 10, § 20(4). The question presented is whether a change in tax rates under the Colorado Employment Security Act is one of those events contemplated by subsection (4).
The Colorado Employment Security Act, which appears as Articles 70 to 82 of Title 8, C.R.S. (1986), establishes a fund which is to be used "for the benefit of persons unemployed through no fault of their own." Section 8-70-102, C.R.S. (1986). The fund is financed through employers who are assessed at various rates according to sections 8-76-102 and 103, C.R.S. (1986. Under these provisions, the rate paid by each employer depends on many variables. For example, some new employers must pay the standard rate of 2.7% of taxable wages. Sections8-76-102(1), C.R.S. (1986); 8-76-103(3)(a)(III)(A), C.R.S. (1992 Supp.). Other employers are taxed at a computed rate, such as experienced employers who have paid into the fund for at least 36 months. The computed rate varies for each employer, depending on the size of the entire fund, and the amount of employer "excess." Employer "excess" refers to the relationship between the amount an employer has paid in taxes, and the amount paid in benefits to the former employees of that employer. Sections 8-76-103(3)(b) (II)(B) and (C), C.R.S. (1992 Supp.). Applicable rates are limited by the schedule, and calculation of the rates is limited to the factors contained in the Act.
In addition, there is a variable surcharge which is added to the standard or computed tax rate of each employer. The surcharge rate depends on the amount of benefits which are paid but cannot be charged to the account of any particular employer, and on the "total taxable payroll estimated to be paid by all employers." Section 8-76-102(4)(a), C.R.S. (1992 Supp.). The resulting surcharge rate may change yearly because the amount of benefits paid but not effectively charged, and the total estimated taxable payroll of all employers in the State, are objectively measured figures that change yearly. Therefore, surcharge taxes paid will fluctuate from year to year, although the method of the computation of the tax will remainconstant.
Unemployment taxes are calculated based on established objective criteria including employer "excess," fund balance, amount of paid benefits not chargeable and tax rates contained in the schedules. An "experience rate" is calculated utilizing the positive or negative excess of taxes paid over the total benefits chargeable to the employer's account. The positive or negative excess number and the current fund balance are then applied to the appropriate scheduled at §§ 8-76-103(3)(b)(II)(B) and (C), C.R.S. (1992 Supp.) to obtain the individual tax rate. The tax rates contained in those schedules span levels of excess from + 20 or more to — 25 and more, and fund balances of 450 million down to zero or deficit level balances. Applicable tax rates are limited by the schedule, and calculation of the rates is limited to the factors contained in the statute.[1]
A particular employer's rates and taxes may fluctuate from year to year, but this is solely a function of the established criteria set forth in the statute, and not as a result of a change or increase in the tax rate schedule. Calculation of employment taxes and application of tax rates from the schedule, although potentially causing an increase in individual rates and taxes, is not, therefore, a tax rate increase but rather is simply an annual computation of taxes due.
Consequently, although an employer's actual rate may increase or decrease as a function of experience, fund levels and chargeable benefits, applicable statutory tax rates contained in the schedule prior to the enactment of Article 10, Section 20, are not increased if the previously established schedule is utilized. Because the present tax structure was enacted in 1986, and therefore was in place before TABOR became effective on November 4, 1992, any rate change which occurs by operation of this scheme is not a "new tax, tax rate increase," or other event within the meaning of TABOR's subsection (4). Therefore, increases in employment tax rates computed under the pre-existing schedules are not tax rate increases requiring voter approval.
Of course, a change in the structure itself — the addition or deletion of a statutory variable, a change in the method by which rates are computed, or any increase in the standard or computed rates in the tax tables — would trigger the need for advance voter approval, assuming a resultant net revenue gain. It should be noted that the present statutory structure expires in 1997; any amendment or extension of the statute would likely fall under Colo. Const. art. 10, §20(4).
SUMMARY
The General Assembly established the manner in which taxes are calculated and the rate schedules prior to the enactment of Article 10, Section 20, of the Constitution. Under this previously set design, taxes and rates may fluctuate yearly without voter approval if there is no change to the method of calculation and tax rates schedules.
 GALE A. NORTON Attorney General
 MARY KAREN MALDONADO First Assistant Attorney General
EMPLOYMENT TAXES UNEMPLOYMENT INSURANCE COLORADO EMPLOYMENT SECURITY ACT
Section 8-70-102, C.R.S. (1986) Section 8-76-203, C.R.S. (1986) Section 8-76-102(1), C.R.S. (1986) Section 8-76-102(4)(a), C.R.S. (1992 Supp.) Section 8-76-103, C.R.S. (1986) Section 8-76-103(3)(a)(III)(A), C.R.S. (1992 Supp.) Section 8-76-103(3)(b)(II)(B), C.R.S. (1992 Supp.) Section 8-76-103(3)(b)(II)(C), C.R.S. (1992 Supp.)
Colo. Const. art. X, § 20
Employment and Training, Div. of
The tax scheme of the Colorado Employment Security Act was established prior to November 4, 1992 and therefore application of that scheme and tax rate schedule is not a tax rate increase within the meaning of Article 10, Section 20.
[1] For example, under subparagraph (II)(B), the schedule for positive excess employers, if the fund level is between $154 million and $182 million, and the excess is + 3%, the tax rate is .014.